UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SPIRTAS COMPANY d/b/a SPIRTAS WRECKING COMPANY,<br><br>Plaintiff(s),<br><br>vs.<br><br>LIBERTY SURPLUS INSURANCE CORPORATION,<br><br>Defendant(s). | )<br>)<br>)<br>)<br>)<br>)  Case No. 4:11CV2098 JCH<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Liberty Surplus Insurance Corporation's ("Liberty") Motion for Summary Judgment, filed May 22, 2012, and Plaintiff Spirtas Company d/b/a Spirtas Wrecking Company's ("Spirtas") Motion for Summary Judgment, filed June 21, 2012. (ECF Nos. 15, 20).

**BACKGROUND**

The history of this matter is as follows: In February, 2010, Spirtas entered into a contract with Edward Kraemer & Sons, Inc. ("Kraemer"), for the demolition of the Seneca Bridge, located in Seneca, Illinois ("Kraemer Contract"). (Spirtas's Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment ("Spirtas's Facts"), ¶ 11). The Kraemer Contract contained a provision allowing Kraemer to issue backcharges to Spirtas, as follows:

> In the event [Spirtas] shall fail to perform or furnish any of the subcontract work or materials, or in the event [Kraemer] shall have to pay any Project obligations of [Spirtas] or in the event [Kraemer] suffers any damage whatsoever or is caused any expense, loss or liability by [Spirtas], all such payments made and all related costs incurred by [Kraemer] shall be expenses of [Spirtas] and may be deducted by [Kraemer] from amounts otherwise due hereunder to [Spirtas]. [Kraemer] may deduct or offset from any amounts due or to become due to [Spirtas] any sum or sums owing by [Spirtas] to [Kraemer] under this or any other contract or subcontract.

(Id., ¶ 13, quoting Spirtas's Exh. 5, ¶ 16). The Kraemer Contract further contained a provision obligating Spirtas to pay for any property damage incurred on the Seneca Bridge demolition project, as follows:

> [Spirtas] shall be liable and responsible for damage or injuries to, or death of all persons, whether employed by [Spirtas] or otherwise, and for damage or injuries to any property whether belonging to [Spirtas], [Kraemer] or to others, resulting or arising from acts, omissions and negligence of [Spirtas] or its agents, employees or sub-subcontractors or suppliers. [Spirtas] shall indemnify and hold [Kraemer] and its agents and employees harmless from any and all loss, liability, penalties, damages, costs, attorneys' fees, expenses, causes of action, claims or judgments resulting (a) from damage, injury, harm or death to any person, or (b) from damage, injury to or destruction of property (including, but not limited to the loss of use of such property) arising out of, sustained, or in any way connected with the performance of the subcontract work under this Agreement, regardless of whether or not such damage, injury, harm or death, affected by or results from the contributory or comparative negligence of [Kraemer], its agents, servants and employees, but only the extent caused by [Spirtas].

(Id., ¶ 14, citing Spirtas's Exh. 5, ¶ 23).

On November 4, 2010, Spirtas entered into a subcontract with Dykon Explosive Demolition Corp. ("Dykon"), under which Dykon was to demolish the main span of the Seneca Bridge in accordance with the specifications contained in the Dykon subcontract. (Spirtas's Facts, ¶ 15). Dykon had in place a Commercial General Liability Policy issued by Liberty, Policy No. DGLCH184353-6, for the period from October 6, 2010, through October 6, 2011 (the "Policy"). (Id., ¶ 1). Spirtas was named as an Additional Insured under the Policy, with respect to the demolition project for the Seneca Bridge. (Id., ¶ 2).

On or about November 17, 2010, Dykon attempted to detonate the Seneca Bridge. (Spirtas's Facts, ¶ 16). According to Spirtas, when Dykon set off the explosive charges it had placed to take down the Seneca Bridge, numerous charges failed to detonate due to Dykon's negligence in placing and detonating the charges. (Id.). Spirtas maintains that as a result, the Seneca Bridge did not come down as planned, causing damage to both the Seneca Bridge and the Seneca River. (Id.). According

to Spirtas, as a result of a significant deviation from the demolition plan, the actual demolition and concomitant closure of the Seneca River to barge traffic lasted approximately sixty hours, rather than the sixteen hours contemplated by the plan. (Id., ¶¶ 17-28).

Spirtas alleges it was forced to pay $81,951.95 in additional costs ("Additional Costs") on the Seneca Bridge demolition job, because of property damage to the bridge and the Seneca River. (Spirtas's Facts, ¶ 29). Spirtas further alleges that on February 17, 2011, Kraemer informed Spirtas it was withholding $150,328.97 from Spirtas as a backcharge ("Kraemer Backcharge"), because of the property damage to the bridge and the Seneca River. (Id., ¶ 31).

In a letter dated March 31, 2011, Spirtas notified Liberty that it was making a claim as an additional insured under the Policy, for a total of $232,280.92 (comprised of the $81,951.95 in Additional Costs, and the $150,328.97 Kraemer Backcharge). (Spirtas's Facts, ¶ 33). To date, Liberty has refused to meet Spirtas's demand for $232,280.92. (Id., ¶ 35). On December 2, 2011, Spirtas brought a Declaratory Judgment action against Liberty in this Court, seeking a declaration that Liberty is obligated under the terms of the Policy to indemnify Spirtas for the $81,951.95 in Additional Costs, and the $150,328.97 Kraemer Backcharge. (ECF No. 1).

The liability policy at issue states in pertinent part as follows:

SECTION I--COVERAGES

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

\*\*\*\*\*

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2)    The "bodily injury" or "property damage" occurs during the policy period.

\*\*\*\*\*

**2. Exclusions**

This insurance does not apply to:

\*\*\*\*\*

**j. Damage To Property**

"Property damage" to:

\*\*\*\*\*

    (5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    (6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*\*\*\*\*

SECTION V--DEFINITIONS

\*\*\*\*\*

4.    "Coverage territory" means:

    a.    The United States of America (including its territories and possessions), Puerto Rico and Canada;

\*\*\*\*\*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*****

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*****

21. "Your work" means:

   a. Work or operations performed by you or on your behalf; and

   b. Materials, parts or equipment furnished in connection with such work or operations.

   "Your work" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   b. The providing of or failure to provide warnings or instructions.

(ECF No. 1-1, PP. 5, 9, 19, 21, 22, 23).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

The interpretation of an insurance policy is governed by state law. American Family Mut. Ins. Co. v. Co Fat Le, 439 F.3d 436, 439 (8th Cir. 2006). "Under Missouri law, the insured has the burden of proving coverage, and the insurer has the burden of proving that an insurance policy exclusion applies." Id. (citation omitted). The words of a policy are given their ordinary meaning, unless it is obvious that a technical meaning was intended, and ambiguous language is construed against the insurer. Gateway Hotel Holdings, Inc. v. Lexington Ins. Co., 275 S.W.3d 268, 275 (Mo. App. 2008).

Upon consideration, the Court finds it need not consider whether Spirtas has shown its losses fall within the coverage provisions, because Policy exclusions 2.j.(5) and 2.j.(6) preclude coverage under the Policy. In so holding, the Court adopts the reasoning of United States District Judge Audrey G. Fleissig in *Spirtas Company d/b/a Spirtas Wrecking Company v. Nautilus Insurance Company*, Cause No. 4:11CV829 AGF. (See Id., ECF No. 50, PP. 19-21).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Liberty Surplus Insurance Corporation's Motion for Summary Judgment (ECF No. 15) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff Spirtas Company d/b/a Spirtas Wrecking Company's Motion for Summary Judgment (ECF No. 20) is **DENIED**.

Dated this 16th day of October, 2012.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE